BOAT SERVICE OF
GALVESTON, INC.

CIVIL ACTION

VERSUS

No.: 17-7210

NRE POWER SYSTEMS, INC.,
et al.

SECTION: "J" (4)

## ORDER & REASONS

Before the Court is a *Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim* **(Rec. Doc. 71)** filed by Third-Party Defendant Scania CV AB ("Scania AB"), an opposition thereto (Rec. Doc. 83) filed by Third-Party Plaintiff NRE Power Systems, Inc. ("NRE") and reply memorandum (Rec. Doc. 89) filed by Scania AB. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED** as to lack of personal jurisdiction and **DENIED** in part and **GRANTED** in part as regards the failure to state a claim upon which relief can be granted.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from an engine failure sustained by the M/V TRISHA GAY, an off-shore crew boat owned and operated by Boat Service of Galveston ("BSOG"). On March 8, 2017, the #2 port inboard engine had a critical failure due to an alleged malfunctioning of one of the engine's injector hold-down bolts. Once the bolt broke, fuel began to leak and eventually led to a fire in the engine room. On July 27, 2017, BSOG and its hull underwriter brought suit against NRE and Scania USA,

a wholly owned Scania AB subsidiary, seeking to recover physical and loss of use damages.

On May 6, 2019, NRE answered BSOG's Amended Complaint and alleged a cross-claim against Scania USA and a third-party claim against Scania AB. NRE's claims against Scania AB are based on Scania AB's position as manufacturer of the malfunctioning engine. Scania AB is a Swedish company with its principal place of business and much of its operations located in Sweden. Scania AB conducts virtually all of its business in North America through its wholly owned subsidiary Scania USA. Scania USA is incorporated in Delaware and has its principal place of business in San Antonio, with a major distribution warehouse located in Jeffersonville, Indiana. Scania AB manufactures the engines and then distributes them in the United States via Scania USA. NRE, a diesel engine company located in Belle Chase, Louisiana, ordered eight Scania AB DII6 72M 800 HP HE engines from Scania USA (and perhaps Scania AB) for ultimate use by BSOG in the TRISHA KAY.[1]

On September 24, 2019, Scania AB filed the present motion to dismiss on the basis of lack of personal jurisdiction and, in the alternative, NRE's failure to state a claim upon which relief can be granted. It is undisputed that Scania AB does not maintain any offices, employees, or property in Louisiana, nor do they specifically target Louisiana consumers directly via advertisements or otherwise. NRE's sole argument in favor of personal jurisdiction is that Scania AB has subjected itself to

---

[1] Although the underlying stream of commerce is not disputed, NRE characterizes the transaction more as a purchase by NRE from Scania USA and then a resale to BSOG. Scania, on the other hand, characterizes the transaction as more of a direct sale to BSOG, with NRE acting as merely a delivery and installation intermediary. Either way, the exact logistics of the sale remain unclear to the Court.

the jurisdiction of this Court under the stream-of-commerce theory. The primary piece of evidence in this case is a factory order NRE alleges it emailed directly to Scania AB. The order details that the engines will be initially delivered FOB to Jeffersonville, Indiana. The ultimate delivery address listed on the order is NRE Power Systems, 1701 Engineers Road, Belle Chase, Louisiana, 70037. Finally, the customer is listed as Boat Services of Galveston, Inc., Pier 19, Galveston, Texas 77550. (Rec. Doc. 83-2 at 3). NRE further relies on the relatively continuous technical support Scania AB provided regarding the engines.

In the event the Court finds that there is an insufficient basis in the record to establish personal jurisdiction over Scania AB, NRE asks for the opportunity to conduct limited jurisdictional discovery.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). However, the plaintiff is not required to establish jurisdiction by a preponderance of the evidence; a prima facie showing is sufficient. *Id.* The court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in favor of jurisdiction. *Id.*

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). "First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment." *Id.* The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010). Accordingly, the inquiry here is whether jurisdiction comports with federal constitutional guarantees. *See id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume personal jurisdiction of a non-resident defendant unless the defendant has certain "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The Supreme Court has recognized two types of personal jurisdiction: specific and general. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017).

Specific jurisdiction is limited to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). To establish specific jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not random fortuitous or attenuated) pre-litigation

connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221 (internal quotation marks and citation omitted). The defendant can then defeat the exercise of specific jurisdiction by showing that it would be unreasonable. *Id.* at 221-22.

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading

as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## <u>DISCUSSION</u>

To begin, the doctrine of general jurisdiction is so clearly inapplicable here that it warrants no in-depth discussion. Additionally, there exists a "presumption that a subsidiary, even a wholly-owned subsidiary, is independent of its parent company for jurisdictional purposes." *Adm'rs of Tulane Educ. Fund v. IPSEN, S.A.*, 450 F. Appx. 326, 329 (5th.Cir. 2011). For the contacts of a subsidiary to be imputed to the parent company, the party seeking to assert jurisdiction must prove the existence of an agency or alter ego relationship. *Dickson Marine Inc. v. Panalpina, Inc.*, F.3d 331, 338 (5th. Cir. 1999). Scania AB has presented substantial evidence that there is no agency or alter ego relationship between itself and Scania USA. (Rec. Docs. 71-2 and 71-3). More importantly, NRE has failed to plead any facts or present any evidence in support of an alter ego or agency relationship. Thus, personal jurisdiction over Scania AB in this case must be obtained on the basis of Scania AB's connections and contacts with Louisiana.

I. **WHETHER SCANIA AB IS SUBJECT TO PERSONAL JURISDICTION UNDER THE STREAM OF COMMERCE DOCTRINE**

### A. Fifth Circuit's Stream of Commerce Jurisprudence

As previously stated, NRE relies on the stream-of-commerce theory to support its jurisdictional claim. "In cases involving a product sold or manufactured by a foreign defendant," this Circuit utilizes a " 'stream-of-commerce' approach to personal

jurisdiction, under which the minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the foreign state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). Under the standard elucidated in *Ainsworth*, "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, but the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

To properly contextualize *Ainsworth* requires understanding that *Ainsworth* was the Fifth Circuit's direct response to the Supreme Court's decision in *J. McIntyre Machinery v. Nicastro*, 564, U.S. 873 (2011). In *Nicastro*, a plaintiff attempted to hale a British corporation, J. McIntyre Machinery, into state court in New Jersey after one of the corporation's machines malfunctioned and caused the plaintiff injury. *Id* at 878. J. McIntyre Machinery sold its machines to an independent U.S. distributor who then distributed the machines to customers throughout the U.S. *Id.* at 888. The New Jersey Supreme Court asserted jurisdiction over J. McIntyre Machinery on the basis of three facts: "(1) [t]he American Distributor on one occasion sold and shipped one machine to a New Jersey customer, namely, Mr. Nicastro's employer, Mr. Curcio; (2) the British Manufacturer permitted, indeed wanted, its independent American Distributor to sell its machines to anyone in America willing to buy them; and (3) representatives of the British Manufacturer attended trade shows in such cities as

Chicago, Las Vegas, New Orleans, Orlando, San Diego, and San Francisco." *Id.* (quotations omitted).

In *Nicastro's* controlling opinion, the United States Supreme Court overturned the Supreme Court of New Jersey on narrow grounds based on existing precedent. *Id.* at 887.[2] The Court's controlling opinion held that because "[a] single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant," the plaintiff had not met his burden of establishing jurisdiction. *Id.* at 888. Nevertheless, the Court went on to enumerate several factors that, if present, could turn a single stream-of-commerce sale into a contact sufficient to establish specific jurisdiction: (1) if the defendant had a "regular…flow…[and] regular course" of sales in the forum state; (2) if the defendant does "something more, such as state-related design, advertising, advice, marketing, or anything else;" (3) if there existed any specific effort by the manufacturer to sell in the forum state; (4) if the forum state possesses a particularly robust industry conducive to the sale of the defendant's products; or (5) the defendant had an "expectation" that the specific good or goods at issue would be purchased in the forum state. *Hebert v. Wing Sale, Inc.*, 337 F. Supp.3d 714, 720 (E.D. La. Aug. 2018) (citing *Nicastro*, 546 U.S. at 888).

Returning to *Ainsworth*, the Fifth Circuit was faced with the same stream-of-commerce jurisdictional quandary the Supreme Court faced in *Nicastro*. In *Ainsworth*, suit was brought by a widow whose deceased husband was killed by a

---

[2] A four-justice plurality overturned the New Jersey Supreme Court on much broader grounds, with a holding that would have significantly restricted the application of stream-of-commerce jurisdiction. Justice Breyer's concurrence was, however, the controlling opinion.

defective forklift in Mississippi. 716, F. 3d at 178. The forklift was designed and manufactured by an Irish corporation, Moffett Engineering, Ltd., and distributed in the United States through an exclusive distribution agreement with Cargotec, a Delaware corporation with its principal place of business in Ohio. *Id.* at 176. Similar to the situation in *Nicastro*, the foreign manufacturer in *Ainsworth* had no direct contact with the forum state except through its U.S. distributor. Nonetheless, interpreting the *Nicastro* decision as merely a factually specific application of existing case law, the Fifth Circuit applied its longstanding stream-of-commerce standards and found that personal jurisdiction existed over the Irish manufacturer. *Id.* at 179.

The *Ainsworth* court highlighted key factual differences that necessitated a different outcome than *Nicastro*, namely that "[f]rom 2000 through September 2010, Moffett sold 13,073 forklifts to Cargotec, worth approximately $254,000,000. Cargotec sold 203 of these forklifts, worth approximately $3,950,000, to customers in Mississippi. Those Mississippi sales accounted for approximately 1.55% of Moffett's United States sales during that period. Moreover, even though Moffett did not have specific knowledge of sales by Cargotec in Mississippi, it reasonably could have expected that such sales would be made, given the fact that Mississippi is the fourth largest poultry-producing state in the United States." *Id.*[3]

Reading *Nicastro* and *Ainsworth* in conjunction, it becomes clear that in the Fifth Circuit "foreseeability" is still the ultimate arbiter of whether a foreign

---

[3] The language used by the Fifth Circuit seems clear that the ideal proof would have been specific knowledge of actual sales in Mississippi. Only in the absence of specific knowledge was the quantity of sales needed to show constructive knowledge.

manufacturer defendant has subjected itself to the jurisdiction of a forum state under the stream-of-commerce standard. Ultimately, foreseeability in the stream-of-commerce context can be proven in one of two ways, (1) either the quantity of defendant's actual or attempted sales (advertising or marketing) is high enough that the defendant can reasonably anticipate being haled into the forum state or (2) the defendant has specific knowledge or expectation that its specific injury-causing product is being sold in the forum state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298 (1980) ("[T]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products with the expectation that they will be purchased by consumers in the forum state."); *see also In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Liability Litigation*, 888 F.3d 753,779 (5th. Cir. 2018) ("[P]laintiffs need only show that [defendant] delivered the product that injured them into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state").

## B. The Nature of Scania AB's Contact with Louisiana Under the Fifth Circuit's Stream of Commmerce Jurisprudence

Here, NRE has failed to provide any proof of the amount of boat engine sales Scania AB completes in Louisiana, what percentage of Scania AB's American profits those sales account for, or that Louisiana has a particularly robust commercial boat engine market. In other words, NRE has failed to provide any of the evidence the Fifth Circuit relied on to find foreseeability in *Ainsworth*. Regardless of NRE's lack

of quantum of sales evidence, however, the Court finds that it possesses personal jurisdiction over Scania AB based on Scania AB's actual knowledge and expectation that its allegedly malfunctioning boat engines were being delivered to Louisiana. *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 420 (5th Cir. 1993) (finding personal jurisdiction where the "[defendant] not only could have foreseen that the products might end up in Texas, it knew as a fact that the products were going to be delivered to a specific user in Houston, Texas.").[4]

Scania AB's role in the sale is disputed. Scania AB attempts to paint its involvement as merely shipping the engines to Scania USA's warehouse in Jeffersonville, Indiana. Scania AB's Senior Vice President of Corporate Legal Affairs and Risk Management, Mikael Sundstrom, states that Scania AB never communicated directly with NRE or BSOG, had no representatives at the initial sales meeting where NRE and Scania USA convinced BSOG to purchase the engines at issue, and never shipped directly to NRE or BSOG, only to Scania USA. (Rec. Doc. 71-2). Scania USA's Pre-Sales Director, Stephen Heitzke, supports Mr. Sundstrom's declaration. (Rec. Doc. 71-3). NRE disagrees and contends that it placed its engine order via email to both Scania USA and Scania AB, with the order clearly stating the place of delivery as NRE's place of business in Louisiana. (Rec. Doc. 83-2 at 1).[5] The

---

[4] All published cases from the Fifth Circuit regarding its stream-of-commerce rules after the Court's infamous spit decision in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) are still good law, as the Fifth Circuit has consistently reiterated. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Liability Litigation*, 888 F.3d 753, 778 (5th. Cir. 2018).

[5] Scania attempts to rebut this assertion by providing an email Walter Scarborough, NRE's service manager, sent to two employees of Scania USA with the factory order form attached. This in no way conclusively rebuts Scarborough's sworn statement that he sent the order forms directly to Scania AB via order.indmar@scania.com. It is not unheard of to send the same document in multiple emails.

factory engine order dated October 21, 2013 supports NRE's contentions. (Rec. Doc. 83-2 at 3).

NRE asserts additional contacts in the form of technical support manuals and bulletins it received from a Scania AB e-mail account containing the Scania AB logo. (Rec. Doc. 83-2 at 1). These technical bulletins included information on the allegedly malfunctioning injector hold down-bolts that caused the fire on the TRISHA KAY. *Id.* Scania AB responds by urging the Court to disregard the technical support documents in its specific jurisdiction analysis because NRE affirmatively signed up with Scania USA to receive said technical support. *See Young v. Britannia S.S. Ins. Ass'n, Ltd.*, No. 93-3554, 1994 WL 320972 *3 (E.D. La. June 1994) ("Contacts which support personal jurisdiction must have been initiated by the defendant.") (citing *Hansen v. Denckla*, 78 S. Ct. 1228 (1958)). Yet, as Scania AB itself is not hesitant to point out, Scania USA is an entirely different legal entity than Scania AB. NRE initiated contact with Scania USA to receive technical support, but the technical support it received came directly from Scania AB. Thus, as far as NRE and Scania AB are concerned, Scania AB sent technical support materials to NRE in Louisiana unsolicited, thereby constituting contact with the forum state.

The Court must resolve any factual conflicts in NRE's favor. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Accordingly, the Court will accept NRE's evidence that Scania AB shipped the engines at issue to Scania USA's warehouse, after receiving NRE's factory order, with the knowledge and expectation that Scania USA would then deliver them to NRE's place of business in Belle Chase, Louisiana.

Subsequently, Scania AB provided NRE with technical support documents regarding the engines at issue that NRE was able to access at its principal place of business in Louisiana.

Under these facts, the Court finds it has personal jurisdiction over Scania AB because Scania AB had the "expectation" that its engines would be delivered to Louisiana, and thus Scania AB could reasonably anticipate being haled into court in Louisiana. *See Jackson*, at 585 (Under the Fifth Circuit's stream-of-commerce jurisprudence "only mere foreseeability that a defendant might be haled into court because it purposefully availed itself of the forum state is required. A defendant need not have purposefully directed its activities to the forum.").

A review of the case law in the Fifth Circuit, both at the appellate and district level, instructs the Court that actual knowledge or expectation of delivery to the forum state is a sufficient basis for personal jurisdiction. *See Ruston Gas*, 9 F.3d at 420 (asserting personal jurisdiction over the defendant in Texas based on the manufacturer's knowledge that at the time the product left the manufacturer's plant it was going to be delivered to a specific address in Houston, Texas); *Nuovo Pignone, SpA v. SORMAN ASIA M/V*, 310 F.3d 374, 379 (5th. Cir. 2002) (finding jurisdiction over an Italian defendant existed in Louisiana in part because "as a voluntary member of the economic chain that brought [the product] to Louisiana, [the defendant] has purposely availed itself of the privilege of conducting business in that state"); *Zoch v. Daimler, AG*, No. 16-57 2017 WL 2903264 (E.D. Tex. May, 2017) ("the pertinent inquiry is not what knowledge [the defendant] had regarding distribution

of the [product] to the United States, but whether it had knowledge or awareness that the seats it manufactured would end up in Texas."); *In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 548 (E.D. La. May 2014) (finding jurisdiction over a foreign manufacturer in Louisiana because the stream-of-commerce foreseeability standard is more than satisfied when "there is evidence showing that [defendant] absolutely knew that the drywall was going to New Orleans."); *Cooper v. Faith Shipping*, No. 06-892, WL 2360668 at *6 (E.D. La. June 2010) (finding jurisdiction in Louisiana in a case where the defendant "had full awareness that the shipment was headed to Louisiana and would be unloaded there, even if Louisiana was not intended to be the [product's] final destination").

The Court is aware that in the majority of the above referenced cases the quantity of defendant's contacts with the forum state were more substantial than one shipment of a defective product. Nevertheless, the ultimate touchstone remains "foreseeability." *Ainsworth*, 716 F.3d at 177. Additional contacts can certainly be helpful in buttressing a claim of personal jurisdiction, but Scania AB has not provided any support for the proposition, nor does the Court's independent research reveal any, that a certain quantum of contact is required once actual knowledge or expectation of the contact is proven. Moreover, Scania AB's subsequent technical support constitutes the type of supplemental contact that weighs in favor asserting personal jurisdiction. *See Cooper*, 2010 WL 2360668 at *5 (discussing how the continued communication and interest of a foreign defendant in a shipment counsels in favor of asserting jurisdiction); *see also In re DePuy Orthopaedics, Inc.,* 888 F.3d at

779 (asserting jurisdiction in Texas over a corporate parent defendant in part because the defendant maintained a website that allowed Texas-based consumers to have product-related materials mailed to them, and the corporate parent allowed its subsidiary to use its logo on communications and packaging received in the Texas).

## C. Scania AB's Arguments are Inapposite

Scania AB cites several cases to support its position in opposition to a finding of personal jurisdiction. First, Scania AB argues that the Supreme Court's decisions in *Nicastro* and *Bristol-Myers* should alter the way the Court analyzes the Fifth Circuit's stream-of-commerce jurisprudence. As previously discussed, it is well-settled law that *Nicastro* did not alter the Fifth Circuit's understanding of specific jurisdiction under a stream-of-commerce theory. *See Ainsworth,* 716 F.3d 174.

Neither did *Bristol-Myers.* As an initial matter, the Court notes that in *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Liability Litigation*, 888 F. 3d 753, decided in 2018, the Fifth Circuit reiterated that its legal test for specific jurisdiction remains the "expansive" standard of foreseeability and expectation expressed by Justice Brennan in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). The Supreme Court's decision in *Bristol-Myers* was issued in 2017. *See Bristol-Myers Squibb Co.*, 137 S. Ct. 1773 (2017). Thus, it is clear that the Fifth Circuit has not interpreted *Bristol-Myers* as a paradigm shifting decision as it regards stream-of-commerce standards.

Furthermore, *Bristol-Myers Squibb* says nothing about the exercise of specific jurisdiction when the manufacturer has actual knowledge and expectation of where

its product will be delivered, and that particular product then causes the injury at issue. In *Bristol-Myers*, BMX, a pharmaceutical company incorporated in Delaware and headquartered in New York, manufactured a drug called Plavix. 137 S. Ct. at 1777-78. BMX sold roughly 187 million Plavix pills to California based distributors between 2006 and 2012. *Id.* Eventually, a total of 678 plaintiffs—86 from California and 592 from other States—brought suit in California alleging injury from taking Plavix. *Id.* The non-California residents' sole contact with California was that BMX had contracted with a California distributor to sell Plavix nationwide. *Id.* at 1783. The Supreme Court held that such contact was insufficient to establish personal jurisdiction over the non-California defendants in California.

The bulk of *Bristol-Myers Squibb* is devoted to reinforcing the notion that when analyzing specific jurisdiction "a defendant's general connections are not enough," and the focus must be on defendant's connections that actually give rise or relate to the suit. *Id.* at 1781. Regarding stream-of-commerce, the *Bristol-Myers Squibb* Court merely utilized a "straightforward application...of settled principles of personal jurisdiction" to find that BMX's "decision to contract with a California company to distribute nationally" did not provide a sufficient basis on its own for personal jurisdiction in California over *non-California plaintiffs*. *Id.* at 1783.

Nothing in the *Bristol-Myers* Squibb opinion supports Scania AB's contention that the expectation of its engine's delivery to NRE in Louisiana is insufficient to support jurisdiction in Louisiana. There was no proof in *Bristol-Myers Squibb* of BMX receiving shipment orders from the non-California plaintiffs with delivery addresses

indicating the Plavix would ultimately be delivered to the non-California states. Moreover, the proper analogies from the present case to *Bristol-Myers Squibb* are as follows: Scania AB equates to BMX, Scania USA equates to the California distributor, and NRE equates to a non-California plaintiff. *Bristol-Myers Squibb* would arguably be applicable if NRE were attempting to establish jurisdiction over Scania AB in Scania USA's home states of Texas and Delaware. NRE, however, is attempting to establish jurisdiction over Scania AB in Louisiana, its home state where it received delivery of the allegedly defective stream-of-commerce product. In fact, *Bristol-Myers Squibb* had the following to say about Plavix plaintiffs suing in their home state, "the residents of a particular state—for example the 92 plaintiffs from Texas and the 71 from Ohio—*could probably sue together in their home states*." (emphasis added). *Id.* at 1783.[6] Here, NRE is attempting to do exactly that.

Scania AB's other proffered support is similarly inapposite. Both district court cases cited by Scania AB include specific factual findings that the foreign manufacturer had no actual knowledge, and therefore no expectation, that the stream-of-commerce for its defective products included the forum state. *See Arnoult v. CL Medical SARL*, No. 14-271, WL 5554301 *9 (S.D. Miss. Sept. 2015) (denying jurisdiction in Mississippi in part because plaintiffs failed to provide evidence the foreign manufacturer had "notice that its products were being marketed in Mississippi."); *Hebert*, 337 F. Supp. 3d at 721 (denying jurisdiction in Louisiana in

---

[6] Interestingly, in *Bristol-Myers* the Supreme Court explicitly "leaves open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1784.

part because the foreign manufacturer, Shanico, averred that it "had no idea whether the [product] Shanico helped to import would eventually be sold in Louisiana.").[7]

Scania AB next attempts to insulate itself from jurisdiction on the grounds that it used F.O.B. shipping terms. However, in the Fifth Circuit an "F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident where other factors…suggest jurisdiction is proper." *Luv n' Care,* 438 at 471-72; *see also In re Chinese Manufactured Drywall Products Liability Litigation,* 894 F. Supp. 2d at 856; *Cooper*, 2010 WL 2360668 at *9 (E.D. La. June 2010).

In support of its position, Scania AB relies exclusively on *Southern Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791 (5th. Cir. 2000). *Southern Copper*, however, is unpublished and predates the published decision in *Luv n' Care*, cited above, which reached a wholly different conclusion about the importance of F.O.B. shipments to a stream-of-commerce analysis.

Scania AB also argues the stream-of-commerce theory is only applicable when the injured party is the ultimate consumer of the goods. Thus, NRE cannot avail itself of stream-of-commerce jurisdiction because the ultimate consumer of the engines was BSOG. To buttress its argument, Scania AB cites the portion of *World-Wide Volkswagen* in which the Supreme Court holds that personal jurisdiction does not "travel with chattel." 444 U.S. at 296.

---

[7] The Hebert court spent a good bit of analysis on defendant's failure to do "something more" to establish a connection with Louisiana, other than deliver products into the stream-of-commerce. While the existence of "something more" undoubtedly helps buttress a finding of personal jurisdiction, the "something more" standard is the more restrictive standard promulgated by Jutsice O'Connor in Asahi. The Fifth Circuit is clear in having adopted the more expansive standard of mere foreseeability, and thus "something more" is not required. *See In Re Chinese Manufactured Drywall Products Litigation*, 894 F. Supp. 2d at 849.

This argument misses the mark. First, there are no Fifth Circuit decisions limiting the application of the stream-of-commerce theory in the manner Scania AB suggests. In fact, the Fifth Circuit has expressly found that stream-of-commerce personal jurisdiction is proper in cases "where the same public policy concerns that justify use of the stream-of-commerce principle in the products liability context are present." *Luv n' Care*, at 472-73. This rationale has led to an application of the stream-of-commerce principle in cases involving breach of warranty or trademark infringement. *See Id.*; *Gulf Consol. Servs., Inc. v. Corinth Pipeworks*, S.A., 898 F.2d 1071, 1073–74 (5th Cir.1990);. Although the present suit is not a direct products liability suit brought by the ultimate consumer of the product, it is highly similar. Indeed, the majority of NRE's claims are derivative of BSOG's products liability claims. When a foreign manufacturer places a defective product in the stream-of-commerce knowing the product will be delivered to a distributor in Louisiana, and the distributor will sell the product to the end consumer in Texas, the foreign manufacturer should reasonably anticipate being haled into court in Louisiana under various indemnification and contribution theories. "The Court sees no reason not to apply the stream-of-commerce theory simply because [defendant] was not the end user or ultimate consumer of the product." *Cooper*, 2010 WL 2360668 at *8.

Second, Scania AB's argument misunderstands *Worldwide-Wide Volkswagen's* holding, which the Fifth Circuit recognizes via its requirement that contact with the forum state be not "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Ainsworth*, 716 F.3d at 177. This rule prohibits

jurisdiction if the contact with the forum state is made outside the foreign manufacturer's anticipated stream-of-commerce for the product. For example, in *World-Wide Volkswagen* the anticipated stream-of-commerce ended with the delivery of the vehicle to retailers in New York, New Jersey, and Connecticut. It was the transportation of the vehicle from those forum states to Oklahoma, a state outside the foreign manufacturer's anticipated stream-of-commerce, that defeated personal jurisdiction in Oklahoma. 444 U.S. 286. All of the caselaw cited by the *World-Wide Volkswagen* Court involved similar situations, in which the stream-of-commerce had run its course as far as the manufacturer-seller defendant was concerned, and it was the buyer-consumer who took the product to the forum state unbeknownst to the defendant. *See Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502, 507 (4th. Cir. 1956); *Reilly v. Phil Tolkan Pontiac, Inc.*, 372 F. Supp. 1205 (N.J. Jan 1974); *Uppgren v. Executive Aviation Services, Inc.*, 304 F. Supp. 165, 170–171 (Minn. Sept. 1969).

The Fifth Circuit's decision in *Eddy v. Printers House (P) Ltd.*, 627 F. App'x 323, (5th. Cir. 2015) supports this interpretation. In *Eddy*, an Indian manufacturer of printing presses placed a product in the stream-of-commerce for ultimate use by the consumer in Mississippi. *Id.* at 325. The consumer in Mississippi then sold the used printing press to a newspaper in Texas where it caused injury to the plaintiff. In denying personal jurisdiction over the Indian manufacturer in Texas, the court said that "[o]nce the press was installed in Mississippi, it exited the stream of commerce because the Mississippi buyer was a consumer of the product, not a

distributor or retailer." *Id.* at 327. Because the product was delivered to an end user in Mississippi, as opposed to a known distributor or retailer, there was no "expectation" that the stream of commerce would extend past Mississippi. *Id.* "The fact that the original buyer of the press sold it to another entity. . .establishes that the press found its way into Texas not through any intentional act taken by [the defendant] but through the unilateral activity of third parties." *Id.*

Here, the anticipated stream of commerce commenced with Scania AB in Sweden, and then proceeded to run through Jeffersonville, Indiana, to New Orleans, Louisiana, before finally ending in Galveston, Texas. The record indicates Scania AB had knowledge of this stream before shipping the allegedly defective engines, and thus Scania AB intentionally placed the engines in the stream of commerce in all three states. To engage in a brief hypothetical, Scania AB's arguments would likely be successful if BSOG had gone bankrupt and sold the engines to a company in California, or if NRE unilaterally shipped the engines to a buyer in Illinois, or if a delivery mistake had sent the engines to Florida where they caused injury. In other words, if the contact with the forum state was actually "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Ainsworth*, 716 F.3d at 177.

Finally, NRE's cause of action clearly arises out of Scania AB's contact with the forum state. The contact is the delivery of the allegedly defective engine and the subsequent technical support regarding the malfunctioning injector bolts. NRE's

claims all arise out of the alleged failure of the engines, specifically the malfunctioning injector bolts.

Scania AB provides one supporting case in attempt to rebut this conclusion, *Stewart v. Marathon Petroleum Co. LP*, 326 F. Supp. 3d. 284 (E.D. La. July 2018). *Stewart*, however, is distinguishable on its facts from the present case. In *Stewart*, the plaintiff was a truck driver who suffered personal injury when a defective trailer manufactured by defendant caused an accident in Ohio. The only connection with Louisiana was that the truck driver's route originated in Louisiana. The court specifically noted that the trailer was shipped to "Florida—not Louisiana." *Id.* at 291. Additionally, the primary injury suffered by the plaintiff in *Stewart* was his physical injury that occurred in Ohio. By contrast, NRE is bringing its third-party suit under indemnity/contribution/tender theories based on its position as a Louisiana link in the anticipated stream-of-commerce chain.

Accordingly, the Court finds that the evidence establishes a prima facie case that Scania AB has minimum contacts with Louisiana, and that NRE's claims arise out of those contacts. Scania AB now has the burden of proving the exercise of jurisdiction would not be fair and reasonable. *See Pervasive Software*, 688 F.3d at 221. As Scania AB has not raised unfairness as a defense to personal jurisdiction, the Court finds that at this stage of proceedings it possesses personal jurisdiction over NRE's claims against Scania AB.

## II. WHETHER NRE HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

NRE pleads five different claims against Scania AB: 1) a claim for tort indemnity and contribution; 2) products liability claims under Louisiana, maritime, and Texas law; 3) a products liability indemnity claim under Texas law; 4) a claim for redhibition under Louisiana law; and 5) a Federal Rule of Civil Procedure Rule 14(c) Tender. Scania AB moves to dismiss all but the Rule 14(c) tender claim for failure to state a claim upon which relief can be granted.

## A. NRE's Claim for Tort Indemnity or Contribution

There is no dispute that NRE's third-party claim for tortious indemnity or contribution is procedurally correct under FRCP (14)(c)(1). Nevertheless, Rule (14)(c) "is merely a procedural vehicle for joinder." *U.S. v. American Commercial Lines*, LLC, No. 11-2076, 2013 WL 1182963 at *3 (E.D. La. Mar. 2013). NRE must still allege a claim that can survive a 12(b)(6) dismissal on the merits. *See Campbell v. Stone, Ins.*, 509 F.3d 665, 669 (5th. Cir. 2007). Scania AB argues that NRE's third-party pleading is defective in that it fails to specify the precise "duties," "contracts," "regulations," or "laws" that Scania AB breached by manufacturing and shipping a defective engine.

"The body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 n. 7 (5th. Cir. 1992). BSOG's products liability claims were brought under general maritime law.[8] In maritime law, a claim for tortious indemnity is only allowed in narrow circumstances. One such circumstance is when "a vicariously liable or non-negligent tortfeasor is entitled to

---

[8] The parties have settled the so-called "warranty claims" brought by BSOG under Texas law in its amended complaint. The only remaining claims are maritime in nature.

indemnity from a co-debtor guilty of actual fault." *Id.* at 833. NRE argues it fits within the category of a non-negligent tortfeasor because "to the extent NRE is held liable, whether under Texas, Louisiana, or maritime law, any alleged wrongdoing was caused in whole or in part by a defect in the engines manufactured by Scania CV AB." (Rec. Doc. 83 at 20). However, the term "non-negligent tortfeasor" applies only to defendants who can have liability imposed on them despite committing no faulty or negligent acts. *Id.* Thus, if a jury or judge's finding of no negligence can completely insulate a defendant from plaintiff's claims, "the general maritime law does not authorize an action for tort indemnity against a third-party defendant." *Id.* at 834.

Here, BSOG claims the March 8, 2017 fire on the TRISHA KAY was caused "by the sole, concurrent, and joint fault and negligence of NRE and Scania [USA]." (Rec. Doc. 1 at 4). If the trier of fact determines NRE was neither faulty nor negligent then NRE will owe BSOG no damages. For that reason, NRE is not a "non-negligent" tortfeasor and cannot state a claim for tort indemnity.

NRE has, however, stated a claim for contribution under maritime law. Maritime products liability cases are governed by the principle of comparative fault. *Lewis v. Timco*, 716 F.2d 1425 (5th. Cir. 1983). Therefore, the only remaining question is whether NRE has plead sufficient facts under a 12(b)(6) standard showing Scania AB's manufacturing was at a minimum a contributing factor in the TRISHA KAY fire.

To adequately plead a maritime products liability claim, NRE must allege that Scania AB "(1) sold or manufactured the product, (2) that the product was

unreasonably dangerous or was in a defective condition when it left the defendant's control, and (3) that the defect resulted in injury to the plaintiff." *In re M/V Danielle Bouchard*, 164 F. Supp.2d 794, 798 (E.D. La. Apr. 2001) (citing 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5–6 (3d ed.2001)). Plaintiffs must also allege how the product was unreasonably dangerous or defective. *See Cheramie v. Panther Helicopters, Inc.*, No. 14-1597, 2015 WL 693221 at *4 (E.D. La. Feb. 2015). Here, NRE's complaint clearly indicates the engine at issue was manufactured by Scania AB, the design defect involved the injector holder and screw potentially breaking off from the engine and said design defect caused BSOG injury.

To sum, NRE has adequately stated a claim for contribution upon which relief can be granted.

## B. NRE's Products Liability Claims

NRE asserts direct products liability claims against Scania AB under both Louisiana, Texas and maritime law. In turn, Scania AB argues that NRE's direct products liability claim may only be brought under maritime law, and that NRE lacks standing to bring a direct maritime products liability claim because it is not an "end user or consumer." *See Saratoga Fishing v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997).

Maritime law applies to a tort claim when it satisfies both the "location" and "connection" tests. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995). The location test is easily satisfied because the events giving rise to Scania AB's alleged liability occurred on navigable waters (Rec. Doc. 1 at 2)

(stating that the TRISHA KAY operates as an offshore supply vessel and was operating under normal conditions when the engine caught fire). The connection test asks a two-part question: "whether the incident has a potentially disruptive impact on maritime commerce" and "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. Here, the two prongs of the connection test are clearly met. Boating accidents and fires have a disruptive impact on maritime commerce, and the operation of an offshore supply vessel is a traditional maritime activity. *See Cheramie*, 2015 WL 693221 *3 (holding that the connection test was met when a helicopter performing offshore services crashed into the ocean). Moreover, NRE does not dispute the characterization of its products liability claim as a maritime tort, nor does it argue for retention of its Louisiana or Texas products liability claim.

Turning to NRE's maritime products liability claim, Scania AB is correct that only the "ultimate user or consumer" of a product may bring a maritime products liability claim. Restatement (Second) of Torts § 402(A)(g) (1965). That restriction, however, does not apply to a defendant's ability in a maritime products liability case to tender a third-party to the plaintiff under Rule 14(c). *See Daigle v. L & L Marine Trans. Co.*, 322 F. Supp. 2d 717 (E.D. La. June 2004). Although NRE opposes Scania AB's motion to dismiss its direct products liability claim, the legal authority and arguments it proffers are in support of a Rule 14(c) tender. Scania AB does not deny, nor could it deny with success, NRE's right to tender Scania AB to BSOG and force Scania AB to answer BSOG's 402(a) products liability claims. To the extent that NRE

is attempting to state a claim itself under 402(a), however, such a claim must be dismissed for failing to state a claim upon which relief can be granted.

### C. NRE's Texas Products Liability Indemnity Claim

As the Court has already determined that maritime products liability law and maritime indemnity law govern this case, NRE's products liability indemnity claim under Texas law must be dismissed for failure to state a claim upon which relief can be granted. Furthermore, like its direct products liability claims under Louisiana and Texas law, NRE appears to concede the dismissal of its Texas products liability indemnity claim by the failure to oppose Scania AB's motion on this issue.

### D. NRE's Redhibition Claim

Under Louisiana law, a "seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code. art 2520. A claim in redhibition is akin to a claim for breach of implied warranty. *Coleman v. Sears Home Improvement Products, Inc.*, No. 16-2537, 2017 WL 1089580 *7 (E.D. La. Mar. 2017). To protect innocent sellers who inadvertently sell defectively manufactured products, a "seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing." La. Civ. Code. art. 2531. Thus, NRE claims damages for any losses it sustains due to a redhibitory defect. Scania AB urges the Court to dismiss NRE's claims on the grounds that an Article 2531 redhibition claim is not ripe until the seller is held liable.

In the present case, BSOG has yet to even file a redhibition claim against NRE. In fact, BSOG has not filed any claims against NRE under Louisiana law. NRE offers

no legal support for the proposition that a seller can recover redhibition indemnity under Article 2531 when not only has there been no initial redhibition claim against the seller, but there has not even been a Louisiana law claim against the seller.

Under Article 2531, "the seller's rights against the manufacturer are derivative of the plaintiff/buyer's action against the seller." *Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 212 (5th. Cir. 1992). It is not sufficient that a seller merely be held liable to a buyer, rather the seller must be held "liable in redhibition." *Id.* BSOG was not "seeking to avoid a sale and recover the price" of the engines. *Id.* "No redhibitory claim was pleaded or proven" by BSOG. *Id.*; *see also Draten v. Winn-Dixie of Louisiana, Inc.*, 94-0767 (La. App. 1 Cir. 3/3/95) 652 So. 2d 675, 677 (stating that *Crosby* stands for the proposition that a party cannot avail themselves of Article 2531 if the buyer did not assert a claim in redhibition.).

Therefore, because BSOG did not assert a claim in redhibition against NRE, the Court cannot grant relief on NRE's Article 2531 redhibition indemnity claim.


**CONCLUSION**

Accordingly,

**IT IS ORDERED** that Third-Party Defendant Scania AB's *Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim* **(Rec. Doc. 71)** is **DENIED** as regards personal jurisdiction.

**IT IS FURTHER ORDERED** that Scania AB's motion to dismiss pursuant to Rule 12(b)(6) is **DENIED** as to Third-Party Plaintiff NRE's claims for contribution

and Rule 14(c) Tender, but **GRANTED** as to NRE's direct products liability claims,

Texas products liability indemnity claim, and Article 2531 redhibition claim.

New Orleans, Louisiana this 10th day of December, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE